■ GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, LTD., et al., Respondents, v NORTH AMERICAN SYSTEMS, INC., et al., Appellants, et al., Defendants. [658 NYS2d 757] —Peters, J. Appeal from a judgment of the Supreme Court

(Harris, J.), entered April 24, 1996 in Albany County, upon a decision of the court in favor of plaintiffs.

Plaintiff General Accident Fire & Life Assurance Corporation, Ltd. investigated the cause of a fire occurring at the home of Charles St. Louis and Betty St. Louis (hereinafter collectively referred to as plaintiffs) which was believed to have been caused by a defectively designed "Mr. Coffee" automatic coffeemaker which had an analogue timer. After reimbursing plaintiffs for the damage to their property, General Accident became subrogated to plaintiffs' rights. With plaintiffs, it commenced this products liability action against defendants seeking reimbursement. After a nonjury trial, Supreme Court found that the coffeemaker was defective and that such defect caused the fire. The court awarded plaintiffs and General Accident damages in the amount $55,000, plus interest and costs.

Testimony at trial revealed that plaintiffs received the coffeemaker, manufactured by defendant North American Systems, Inc., in 1984 as a gift from a neighbor who had purchased it from defendant Service Merchandise, Inc. Approximately two months later, plaintiffs took the coffeemaker to an authorized service center for repairs. Thereafter, they used the machine with no difficulty until the February 1986 fire.

On February 5, 1986, plaintiffs set the coffeemaker to commence brewing at 4:45 A.M. the next morning. When Betty St. Louis awoke at approximately 5:00 A.M. she smelled smoke, realized her home was on fire and left with her husband. The fire department arrived shortly thereafter and extinguished the fire. Six days later, General Accident asked Robert E. Persons, a licensed professional engineer and forensic engineer who had investigated over 6,000 fires, to investigate the fire and determine whether it was caused by the coffeemaker. Persons testified that notwithstanding such request, he did not feel compelled to accept General Accident's causation theory and had found in 25% to 35% of the cases he investigated a cause other than that suspected. In connection with this investigation Persons issued a preliminary report.

Persons testified that he observed the fire to be confined to the southeast corner of the kitchen and noted that the counter in that area had burned "almost all [of] the way from the east wall to the refrigerator". He further testified that there was one hole in the counter near the east wall at the southeast counter which had either burned away or burned so badly that it had collapsed. In connection with his investigation, Persons testified that he not only examined the physical space around

the refrigerator but also examined its insulation and machinery, yet did not remove the back panel. As a result of his investigation, he opined with a "100 percent degree of engineering, scientific certainty, [that] the refrigerator had nothing whatsoever to do with causing [the] fire".

Persons next examined, but did not conduct any tests on, the microwave. He observed that the interior thereof was not affected by the fire and that the electrical components showed no evidence of heat or fire damage. After observing that the insulation on its line cord was burned away where the cord had touched the countertop while its plug remained intact, Persons again opined "with a reasonable degree of engineering and scientific certainty that the microwave was not responsible for causing the fire". He stated that he moved the microwave during his investigation from the floor where he found it to a location closer to the sink and plugged its line cord into a countertop outlet that he had originally believed it shared with the coffeemaker. As a result, he explained that some of the photographs he had taken did not accurately reflect the fire scene. Persons admitted that he never asked into which outlet the microwave had been plugged; however, it was revealed during the trial that both the microwave and the refrigerator shared an outlet behind the refrigerator. After examining the area where the fire was most severe and finding no evidence of a trash can or debris in which the fire could have started, Persons opined that the fire had not started in the open spaces behind the kitchen walls since there was no damage to the kitchen outlets and the sheetrock remained primarily intact. Upon his complete investigation of the fire scene, Persons eliminated all possible ignition sources except for the coffeemaker.

Defendants propounded the testimony of Elliot Duncan, Director of Product Safety with North American and a certified fire investigator. He testified that based solely upon the photographs of the fire scene, he "came to the conclusion very quickly that [the coffeemaker] was not the cause of the fire and was not even at the direct origin of the fire". Duncan testified that his opinion was based, in part, on the location of the coffeemaker depicted in the photographs. He noted that the ceiling joists above the coffeemaker were "relatively undamaged" while those around the corner to the right showed "significant burning and charring". He believed that the photographs depicted more damage to the line cords of the refrigerator and microwave than that of the coffeemaker. After it was revealed at trial that the location of the coffeemaker depicted in the

photographs was not its location at the time of the fire, Duncan did not change his opinion.

Supreme Court found, at the conclusion of this nonjury trial, that the coffeemaker had been defective and that such defect caused the fire. Defendants now appeal.

Vested with " 'the power to weigh conflicting testimony and inferences and [to] grant the judgment which upon the evidence should have been granted by the trial court' " (*Callanan Indus. v Olympian Dev.*, 225 AD2d 941, 942, quoting *Chopp v Welbourne & Purdy Agency*, 135 AD2d 958, 959), and at all times giving due deference to the court's assessment of the witnesses' credibility and the quality of the evidence, we find no reason to disturb the judgment of Supreme Court (*see, Callanan Indus. v Olympian Dev., supra*; *McDowell v Atco Rubber Prods.*, 221 AD2d 876, 877, *appeal dismissed* 87 NY2d 966). While we fully acknowledge the conflicting expert testimony concerning, *inter alia*, the ignition source, our review of the circumstantial evidence in the record supports Supreme Court's determination that the coffeemaker was defective and that such defect was a substantial factor in causing the fire (*see generally, Halloran v Virginia Chems.*, 41 NY2d 386; *Codling v Paglia*, 32 NY2d 330).

As to defendants' contention that Supreme Court improperly considered the opinion stated in the fire report as to the origin of the fire, we agree. Nonetheless, we do not find the court's consideration thereof to be fatal since there exists sufficient other evidence in the record to fully support the determination rendered (*see, Kahl v Loffredo*, 221 AD2d 679).

Mikoll, J. P., Crew III, White and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, with costs.