**Audrey JACKSON, Plaintiff,**

v.

**THE NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES, the City of New York, Larry Singleton, and Frank John, Defendants.**

No. 03 Civ. 9595(SAS).

United States District Court,
S.D. New York.

April 17, 2007.

---

Peter A. Romero, Frank & Associates, P.C., Farmingdale, NY, for Plaintiff.

Daniel Chiu, Assistant Corporation Counsel, New York, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Audrey Jackson is suing the New York City Department of Homeless Services ("DHS") and the City of New York (collectively the "City Defendants")[1] for gender discrimination, alleging violations of federal, state and local laws.[2] The City Defendants now move for summary judgment on

---

1. Then Chief Judge Michael B. Mukasey dismissed the individual defendants, Larry Singleton and Frank John, from this lawsuit because Jackson failed to effect timely service. *See* Fed.R.Civ.P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time.").

2. *See* Complaint ("Compl.") ¶ 1 (alleging, *inter alia,* violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* the New York State Human Rights Law, Executive Law § 296 *et seq.,* the New York City Human Rights Law, N.Y. Admin. Code § 8–101 *et seq.,* the New York State Equal Pay Law, Labor Law § 194, and the Equal Pay Act, 29 U.S.C. § 206(d)).

the following grounds: Jackson cannot state a prima facie case of discrimination or retaliation; the DHS has established a legitimate non-discriminatory reason for its decision to select someone other than Jackson for the position of Motor Vehicle Supervisor ("MVS"); and Jackson received the same wages that her male colleagues did.[3] Jackson does not oppose the City Defendants' motion with respect to "claims of retaliation, unequal wages and claims pursuant to State and City Human Rights Law."[4] Jackson does, however, oppose the City Defendants' motion with respect to her Title VII claim. For the following reasons, the City Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

The basic facts of this case are not in dispute. In or about November 1989, Jackson began working as a Motor Vehicle Operator ("MVO") for the DHS.[5] Throughout most of her employment, Jackson worked out of the Hinsdale facility.[6] In December 2001, some of Hinsdale's MVSs were suspended for misconduct.[7] Jackson was not involved in that misconduct,[8] and she was temporarily appointed to one of the vacant positions.[9]

Jackson contends that she performed her MVS duties in an exemplary manner. She increased Hinsdale's productivity by "[r]edistributing the work in a different order."[10] The Director of Fleet Administration, Frank John, was pleased with Jackson's performance.[11]

Not everyone was pleased that Jackson was a MVS, however. Jackson alleges that male MVOs protested her appointment.[12] They called her names[13] and refused to take orders from her.[14] In late December, John removed Jackson from the MVS position because of the disruption

**3.** *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment at 1.

**4.** Plaintiff's Memorandum of Law in Opposition to Defendant's [sic] Motion for Summary Judgment ("Opp. Mem.") at 1 n. 1. *See also* Transcript of Hearing dated December 26, 2006, at 12 (wherein the Court stated that Jackson "should take a look at the two claims, retaliation and pay, and see if [she] really can prevail on the motion").

**5.** *See* City Defendants' Rule 56.1 Statement ("Def. 56.1") ¶ 2; *see also* Deposition Transcript of Plaintiff Audrey Jackson, dated November 17, 2006 ("Jackson Dep."), Ex. A to the Declaration of Peter Romero ("Romero Decl."), counsel to plaintiff, at 33.

**6.** *See* Def. 56.1 ¶ 3; *see also* Jackson Dep. at 28. The Battered Women's Shelter referred to in Jackson's deposition is also known as the Hinsdale facility. *See* Opp. Mem. at 2.

**7.** *See* Def. 56.1 ¶ 10; *see also* Deposition Transcript of Anthony King, dated November 15, 2006 ("King Dep."), Ex. F to Romero Decl., at 10.

**8.** *See* King Dep. at 12; *see also* Deposition Transcript of Frank John, dated December 8, 2006 ("John Dep."), Ex. B to Romero Decl., at 13.

**9.** *See* Def. 56.1 ¶ 10; *see also* Deposition Transcript of Plaintiff Audrey Jackson, dated November 17, 2006, Additional Pages ("Jackson Dep. # 2"), Ex. A-1 to Romero Decl., at 164.

**10.** Jackson Dep. # 2 at 129–30; *see also* Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. 56.1") ¶ 18.

**11.** *See* Pl. 56.1 ¶ 18; *see also* Jackson Dep. # 2 at 189.

**12.** *See* Jackson Dep. at 58, 60–64.

**13.** *See* John Dep. at 16 ("I heard a lot of people call her 'ho.'"); *see also* Deposition Transcript of Frank John, dated December 8, 2006, Additional Pages ("John Dep. # 2"), Ex. B-1 to Romero Decl., at 26 ("I heard a lot of people refer to her as a bitch.").

**14.** *See* Jackson Dep. at 58 (stating that another MVO said, "Hell, no, I don't want her supervising me"); *see id.* at 60 ("[S]he can't tell me shit.").

her appointment was causing and replaced her with Lawrence Singleton.[15]

Jackson again became a MVS for a brief period in 2002.[16] At that time, her duties were restricted to dispatching female MVOs because the men refused to follow her orders.[17] Jackson was subsequently removed from the MVS position. Shortly thereafter, the DHS posted a vacancy notice for a MVS position.[18]

Instead of Jackson, the DHS hired Joseph Johnson, from outside of the agency, for the MVS position.[19] Jackson alleges that hiring from outside the agency is contrary to policies that govern the DHS. For example, the City of New York specifically directs its agencies to consider their own employees for promotion and transfer opportunities.[20] Furthermore, Rule V of the Personnel Rules and Regulations of the City of New York provides that agency personnel who hold lower grade positions that are in the direct line of promotion should be used to fill vacancies "so far as practicable."[21] There is a direct line of promotion from MVO to MVS.[22] According to another female applicant for the MVS position, the DHS usually follows those policies encouraging internal promotion.[23]

Jackson alleges that Johnson was not as qualified for the job as she was. Johnson was unfamiliar with the shelter system and had to ask for Jackson's assistance.[24] He had less than two years' experience as a MVO before becoming a MVS,[25] while Jackson had thirteen years' experience.[26] Johnson only possessed a Commercial Driver's License ("CDL") permit.[27] Jackson had her CDL.[28] In fact, Johnson was subsequently demoted from his MVS position because he failed to pass the motor vehicle supervisor's test.[29] From 1998 to 2003, all MVSs employed by the DHS were male.[30]

**15.** *See* Def. 56.1 ¶ 14; *see also* John Dep. at 18–19.

**16.** *See* Pl. 56.1 ¶ 17; *see also* Jackson Dep. at 78.

**17.** *See* Pl. 56.1 ¶ 17; *see also* Jackson Dep. at 78–83.

**18.** *See* Def. 56.1 ¶ 18; *see also* John Dep. at 18.

**19.** *See* Def. 56.1 ¶ 18; *see also* Affidavit of Frank John, dated January 10, 2003 ("1/10/03 John Aff."), Ex. O to Romero Decl., ¶¶ 8–10.

**20.** *See* New York City Equal Employment Opportunity Policy, Ex. G to Romero Decl., at 14–15 ("Other measures which may be used to ensure fair employment practices include, for example ... [p]romoting employees' awareness of opportunities for promotion and transfer within the agency, and ensuring that the agency considers its own employees for such opportunities.").

**21.** Personnel Rules and Regulations of the City of New York, Ex. H to Romero Decl., § 5.3.3.

**22.** *See* Opp. Mem. at 2.

**23.** *See* Deposition of Stephanie Walker, dated November 15, 2006, Ex. E to Romero Decl., at 11.

**24.** *See* Jackson Dep. # 2 at 192–93.

**25.** *See* Memorandum from Marisa Allard, Director of Human Resources, to Joseph Johnson, dated July 10, 2000, Ex. L to Romero Decl. ("You have been appointed from a civil service list as a Motor Vehicle Operator, effective July 10, 2000.").

**26.** *See* Jackson Dep. at 33 (stating that Jackson became a MVO in 1989).

**27.** *See* Letter from Yvette Pilgrim, Deputy Director of Employment Services, to Joseph Johnson, dated March 25, 2003, Ex. K to Romero Decl.

**28.** *See* Jackson Dep. # 2 at 131.

**29.** *See* John Dep. # 2 at 22–23.

**30.** *See* Letter from Sonya Howard–Williams, Associate Investigator for the DHS, to Valerie F. Shoy, Human Rights Specialist with the

Jackson alleges that the City Defendants have vacillated in their reasons for not promoting her. In September 2002, John stated that Jackson "did not know how to dispatch properly."[31] John explained that he did not select Jackson for the MVS position because she lacked "leadership skill" and "her attendance was questionable."[32] John later admitted that Jackson performed well as a temporary MVS and that he had no complaints about her attendance.[33] In fact, John testified that Jackson increased the DHS's productivity while she was serving as a temporary MVS.[34] Then, in September 2003, John explained that Thailia Edwards, the Deputy Commissioner of Administration, did not hire Jackson because both he and Edwards wanted to hire someone from outside the Hinsdale facility.[35] Edwards also maintains that the DHS wanted to hire someone from outside Hinsdale because of the former disciplinary problems within the Hinsdale unit.[36] Yet two of the MVSs who had been suspended for their misconduct resumed their supervisory duties at Hinsdale.[37]

## III. APPLICABLE LAW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[38] An issue of fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "[39] An issue of fact is material if it " 'might affect the outcome of the suit under the governing law.' "[40]

To prevail on a motion for summary judgment, the movant must demonstrate that no genuine issue of material fact exists.[41] To defeat a motion for summary judgment, the nonmovant must raise a genuine issue of material fact.[42] In determining whether there is a genuine issue for trial, the court must construe the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor.[43] Howev-

State of New York, dated May 19, 2003 ("5/19/03 Letter"), Ex. M to Romero Decl. ("From 1998 to present all Motor Vehicle [Supervisors] employed are males.").

**31.** Affidavit of Frank John, dated September 10, 2002 ("9/10/02 John Aff."), Ex. N to Romero Decl., ¶ 10.

**32.** *Id.* ¶ 16.

**33.** *See* John Dep. at 19–20.

**34.** *See id.* at 19 ("She never let the guys take what job they wanted and our productivity went up.").

**35.** *See* 1/10/03 John Aff. ¶¶ 3, 9.

**36.** *See* Affidavit of Thailia Edwards, dated January 8, 2003 ("Edwards Aff."), Ex. Q to Declaration of Daniel Chiu, counsel to City Defendants, in Support of City Defendants' Motion for Summary Judgment, ¶ 10.

**37.** *See* Opp. Mem. at 14.

**38.** Fed.R.Civ.P. 56(c).

**39.** *Williams v. Utica Coll. of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir.2006) (quoting *Stuart v. American Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir.1998)).

**40.** *Bouboulis v. Transport Workers Union of Am.,* 442 F.3d 55, 59 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

**41.** *See, e.g., Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir.2006).

**42.** *See, e.g., Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir.2006).

**43.** *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 456 (2d Cir.2007) (citing *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir. 1997)).

er, the nonmoving party may " 'not rely on conclusory allegations or unsubstantiated speculation.' "[44]

"[T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation."[45] " 'It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.' "[46] However, a "trial court must be especially cautious in deciding whether to grant this drastic provisional remedy in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination."[47]

## B. Sex Discrimination Claims

▮ Title VII of the Civil Rights Act of 1964 provides as follows:

It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.[48]

A Title VII action is subject to the shifting burdens framework originally established in *McDonnell Douglas Corp. v. Green.*[49] Under this framework, a plaintiff must first establish a prima facie case that illegal discrimination has occurred.[50]

To establish a prima facie case of a discriminatory failure to promote, a Title VII plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.[51]

A plaintiff's initial burden is "minimal."[52]

▮ If the plaintiff makes out a prima facie case, the "burden shifts to the defendant ... to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason."[53] "[O]nce the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a

---

**44.** *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 428 (2d Cir.2001)). *Accord Salahuddin,* 467 F.3d at 273 ("Like the movant, the nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment.") (citation omitted).

**45.** *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001) (ellipses in original) (quotation marks and citation omitted). *Accord Figueroa v. New York City Health and Hosps. Corp.,* No. 03 Civ. 9589, 2007 WL 943537, at *2 (S.D.N.Y. Mar.27, 2007).

**46.** *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 603 (2d Cir.2006) (quoting *Abdu-Brisson,* 239 F.3d at 466).

**47.** *Belfi v. Prendergast,* 191 F.3d 129, 135 (2d Cir.1999). *Accord Briggs v. Mercedes–Benz Manhattan, Inc.,* No. 04 Civ. 7094, 2006 WL 2789927, at *4 (S.D.N.Y. Sept. 27, 2006).

**48.** 42 U.S.C. § 2000e–2(a)(1).

**49.** *See* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**50.** *See Joseph v. Leavitt,* 465 F.3d 87, 90 (2d Cir.2006).

**51.** *Petrosino v. Bell Atl.,* 385 F.3d 210, 226 (2d Cir.2004).

**52.** *Joseph,* 465 F.3d at 90.

**53.** *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

finding of prohibited discrimination."[54] That is, once the employer has given a non-discriminatory reason,

> the pattern of presumptions and burden shifts ... drops away, and the question in adjudicating the defendants' motion for summary judgment becomes simply whether the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that her dismissal [or lack of promotion] was motivated at least in part by [sex] discrimination.[55]

The fact that an employer offers inconsistent explanations of its non-discriminatory reason may indicate that its explanations are mere pretext.[56] In that situation, "a genuine issue of material fact [is raised] with regard to the veracity of [the] non-discriminatory reason."[57]

## IV. DISCUSSION

### A. Jackson's Prima Facie Case

■ The record demonstrates that Jackson has established a prima facie case of sex discrimination. As a female, Jackson is a member of a protected class. She applied and was qualified for a position for which there was a vacancy.[58] In fact, John testified that Jackson was among the most qualified for the MVS position.[59] Jackson was not promoted and thus suffered an adverse employment action. Instead, the DHS hired a less experienced male.[60] Jackson has "satisfied the de minimis requirements of a prima facie case."[61]

### B. City Defendants' Non-discriminatory Reasons

■ The DHS employees have offered various reasons for not promoting Jackson to the position of MVS. Initially, John explained that Jackson was not selected because she did not know how to dispatch properly, she lacked leadership skills, and her attendance was questionable.[62] Later, however, John recanted some of those statements and testified that Jackson not only dispatched properly, but also increased productivity at the Hinsdale facility while she was acting as a temporary MVS.[63] He also stated that her attendance was satisfactory.[64] At least one of Jackson's coworkers believes that Jackson evidenced good leadership skills.[65] The DHS employees later asserted that the DHS did not promote Jackson because the agency wanted to hire someone from outside the

54. *Joseph,* 465 F.3d at 90.

55. *Tomassi v. Insignia Fin. Group, Inc.,* 478 F.3d 111, 114 (2d Cir.2007).

56. *See Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 106 (2d Cir.2001) (citing *EEOC v. Ethan Allen Inc.,* 44 F.3d 116, 120 (2d Cir.1994)).

57. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 137 (2d Cir.2000). *Accord Reeves v. Johnson Controls World Servs.,* 140 F.3d 144, 157 (2d Cir.1998) ("[T]he inconsistencies between the deposition testimony of [plaintiff's coworkers] and the version of events recounted by defendants at least create a triable issue as to the true motivation for plaintiff's dismissal.").

58. *See* John Dep. at 18 (describing the conditions that resulted in the vacancy notice); *see also* John Dep. # 2 at 21 (stating that Jackson and Stephanie Walker were the best qualified candidates for the position).

59. *See* John Dep. # 2 at 35.

60. *See id.*

61. *Tomassi,* 478 F.3d at 114 (quotation marks and citation omitted).

62. *See* 9/10/02 John Aff. ¶ 16.

63. *See* John Dep. at 19.

64. *See id.* at 20.

65. *See* Deposition Transcript of J.C. Williams, Motor Vehicle Operator, dated November 15, 2006, Ex. Q to Romero Decl., at 11–12.

Hinsdale facility.[66] That the DHS has offered different explanations for its employment decision may, by itself, create a triable issue of fact.[67]

The City Defendants contend that Edwards, not John, decided who would receive the MVS position and that Edwards has consistently maintained that the DHS did not promote Jackson because the DHS wanted someone from outside the Hinsdale facility.[68] Although Edwards's single explanation does not constitute a shifting explanation, it could still be considered a pretext. At approximately the same time Edwards chose not to promote Jackson because she was from the Hinsdale facility, two employees who were involved in the Hinsdale misconduct resumed their positions as MVSs.[69]

■ John's explanations regarding the DHS's failure to promote Jackson have been inconsistent, and he may have been a participant in the decision not to promote Jackson. In his 2002 affidavit, John states that he did not select Jackson because she lacked leadership skills and her attendance was questionable.[70] He also indicated that he did not speak with Edwards regarding the MVS position.[71] However, in 2003, John testified that he met with Edwards about the need for a new MVS, and he stated that he wanted someone from outside the agency.[72] John then recommended to Edwards that she hire Johnson, although Edwards made the "ultimate decision." [73] The evidence shows that there is a triable issue of material fact as to who made the decision not to promote Jackson and whether the explanations for this decision are inconsistent or pretextual.

**C. A Reasonable Jury Could Find the DHS's Failure to Promote Jackson Was Motivated by Sex Discrimination**

■ To rebut the City Defendants' nondiscriminatory reasons for not promoting her, Jackson has proffered other evidence indicating sex discrimination. When Jackson was initially put in the position of temporary MVS, John had to remove her because of her male co-workers' opposition.[74] They referred to Jackson as "bitch" and "ho." [75] John told Jackson that she would not be promoted to MVS because it was "not the right time" for a woman.[76] From at least 1998 through 2003, the DHS did not employ a single female MVS.[77] Although none of these

---

66. *See* Edwards Aff. ¶ 10.

67. *See Carlton,* 202 F.3d at 137.

68. *See* City Defendants' Reply Memorandum of Law in Further Support of Motion for Summary Judgment at 6.

69. *See* Def. 56.1 ¶ 14; *see also* Opp. Mem. at 14.

70. *See* 9/10/02 John Aff. ¶ 16.

71. *See id.* ¶ 21.

72. *See* 1/10/03 John Aff. ¶ 3.

73. *Id.* ¶ 10.

74. *See* John Dep. at 14–18.

75. *Id.* at 16; *see also* John Dep. # 2 at 26. Those who called Jackson a "bitch" and a "ho" were not decision-makers; however,

Jackson may be able to prove that the DHS made its promotion decision based in part on this animus and the disruption that these derogatory statements caused. *See* John Dep. at 18 (The employees "have too much disruption" due to Jackson serving as MVS.). *See also* Opp. Mem. at 8 ("King and other male employees pressured John to hire a male for the permanent position.").

76. Jackson Dep. at 93–94. At this stage in the proceedings, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Allstate Ins. Co.,* 473 F.3d at 456 (quotation marks and citation omitted).

77. *See* 5/19/03 Letter. *See also Stratton v. Department for the Aging,* 132 F.3d 869, 877 (2d Cir.1997) (statistics "may be relevant simply on the question of motive.").

facts is dispositive on its own, in combination they would allow a reasonable juror to find that Jackson has proved sex discrimination. Jackson is entitled to her day in court.

## V. CONCLUSION

For the foregoing reasons, defendants' motion is denied in part and granted in part. The motion is granted with respect to plaintiff's retaliation, unequal wages, and state and local claims, all of which are hereby dismissed. The motion is denied with respect to plaintiff's Title VII claim. The Clerk of the Court is directed to close this motion (docket no. 26). A conference is scheduled in this matter for April 27, 2007, at 3:30 p.m. in courtroom 15C.

SO ORDERED.