Barbara FINCH, individually, on behalf of Manny Moe and on behalf of all others similarly situated, Carol Jordan, individually and on behalf of all others similarly situated, and Barbara Ortiz, individually and on behalf of all others similarly situated, Plaintiffs,

v.

NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES; John A. Johnson, individually and in his capacity as the Commissioner of the New York State Office of Children and Family Services; The City of New York, Administration for Children's Services; William C. Bell, individually and in his capacity as Commissioner of the Administration for Children's Services of the City of New York; Dave R. Peters, individually and in his capacity as Director, State Central Register, New York State Office of Children and Family Services, Division of Development and Prevention Services; Jane Doe 1, indi-

vidually and in her capacity as a Supervisor of the State Central Register; Jane Doe 2, individually and in her capacity as an employee of the State Central Register; John Doe 1, individually and in his capacity as a Supervisor of Administration for Children's Services; and John Doe 2, individually and in his capacity as an employee of Administration for Children's Services, Defendants.

No. 04 Civ. 1668 SAS.

United States District Court, S.D. New York.

July 3, 2007.

Thomas Hoffman, Law Offices of Thomas Hoffman, P.C., New York City, for plaintiffs.

Robert L. Kraft, Assist. Atty. Gen., New York City, for state defendants.

Carolyn Wolpert, Assist. Corp. Counsel, New York City, for city defendants.

*OPINION AND ORDER*

SCHEINDLIN, District Judge.

Plaintiffs Barbara Finch, Carol Jordan and Barbara Ortiz, on their own behalf and on behalf of all others similarly situated,[1] allege that their rights under the Ninth and Fourteenth Amendments of the United States Constitution were violated.[2] In particular, plaintiffs claim that they were adversely affected by inordinate delays in the scheduling of administrative hearings in which they challenged their listing as subjects of "indicated" reports of child abuse/maltreatment in the Statewide Central Register of Child Abuse and Maltreatment ("SCR" or the "State Registry"). Plaintiffs bring this action pursuant to 42 U.S.C. § 1983,[3] seeking both money damages and injunctive and declaratory relief.

The "State defendants" are comprised of the New York State Office of Children and Family Services (the "OCFS"), John A. Johnson, individually and as Commissioner of the OCFS ("Commissioner Johnson"), and Dave R. Peters, individually and as Director of the Statewide Central Register of Child Abuse and Maltreatment ("Director Peters").[4] The State defendants move to dismiss plaintiffs' First Amended Complaint dated June 11, 2004 ("Am. Cmpl.") pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. The State defendants seek an Order from this Court:

(1) dismissing, for lack of subject matter jurisdiction under the Eleventh Amendment to the United States Constitution, all claims: (1) brought against the OCFS;[5] (2) for money damages against the State defendants; (3) for injunctive/declaratory relief relating to past conduct; and

---

1. Plaintiffs seek certification as a class under Federal Rule of Civil Procedure 23(b)(2). *See* First Amended Complaint ("Am. Cmpl." or "Complaint") ¶ 19. At a status conference on June 18, 2004, the late Judge Richard C. Casey ruled that class certification issues should not be addressed until after disposition of the instant motion.

2. In particular, plaintiffs allege substantive and procedural due process violations by claiming that "[t]he actions and failure by each of the defendants in failing to timely schedule a pre- or post-deprivation hearing after a subject has been place on the State Registry and a timely request for expungement has been made, or to timely provide a copy of the investigative report[,] constitutes an unlawful and unconstitutional deprivation of plaintiff's liberty and property rights without due process of law in violation of the Ninth and Fourteenth Amendments to the United States Constitution." Am. Cmpl. ¶ 101. Since the filing of the State defendants' motion, plaintiffs have withdrawn all claims based on the Ninth Amendment, seeking instead to rely solely on the Fourteenth Amendment. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss or for Summary Judgment and in Support of Cross Motion ("Pl.Mem.") at 4 ("Whether the pursuit of private employment is a fundamental liberty interest implicated by the Ninth Amendment need not be addressed in light of the viable Fourteenth Amendment claim.").

3. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

4. Commissioner Johnson and Director Peters are referred to herein as the "individual State defendants."

5. In their opposition papers, plaintiffs have withdrawn all claims against the OCFS. *See* Pl. Mem. at 4 ("OCFS, being a State agency, all relief sought against it is withdrawn as barred by the Eleventh Amendment."). Accordingly, the State defendants' motion to dismiss such claims is now moot.

(4) alleging violations of New York state law;[6] and

(2) dismissing the claim that N.Y. SSL section 422(6) violates the Constitution of the United States.[7]

In the alternative, the State defendants move for an order, pursuant to Federal Rule of Civil Procedure 12(f), striking references to race and ethnicity from paragraphs 1 and 2 of the First Amended Complaint on the ground that such references are immaterial. Plaintiffs oppose the State defendants' motions and cross-move for a preliminary injunction enjoining the State defendants from failing to hold prompt administrative hearings.[8] For the following reasons, the State defendants' motions are granted in part and denied in part. The relief plaintiffs seek in their cross-motion will be discussed at the next court conference.

## I. BACKGROUND

### A. Statutory Framework [9]

The New York Legislature has declared that "[a]bused and maltreated children in this state are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment," and that "[i]t is the purpose of this title to encourage more complete reporting of suspected child abuse and maltreatment and to establish in each county of the state a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child or children from further abuse or maltreatment. . . ." [10]

To accomplish that end, the OCFS supervises the provision of child protective services by local social services districts.[11] Each such district is required to establish child protective services to investigate allegations of child abuse or maltreatment and to provide services to children in need of protective services.[12] The Administration for Children's Services (the "ACS") is the child protective services agency for the

---

**6.** There appears to be no provision in the New York Social Services Law ("NY SSL") that requires administrative hearings to be held within a certain time frame. *See infra* n. 37. In any event, plaintiffs are not suing the State defendants for any violations of state law. *See* Pl. Mem. at 21 ("We are not requiring this court to enforce the SSL time guidelines for scheduling hearings, but rather to declare the delays as applied to the plaintiffs unconstitutional."). Therefore, any claims based on state statutory violations are hereby dismissed.

**7.** In their cross-motion, plaintiffs ask this Court to declare section 422(6) "unconstitutional as to disclosures of names to licensing or provider agencies after 10 years of listing on the Statewide Central Registry." Since then, plaintiffs have withdrawn their request to have section 422(6) declared unconstitutional. *See* 3/18/05 Letter from Thomas Hoffman, plaintiffs' counsel, to the late Judge Richard C. Casey ("Plaintiff's request to de-clare SSL 422(6) unconstitutional is withdrawn."). Accordingly, the State defendants' request that this claim be dismissed is now moot.

**8.** *See* Cross Motion to Declare SSL 422(6) Unconstitutional and to Schedule a Hearing on Plaintiffs' Request for Preliminary Injunction ("Cross–Motion").

**9.** Plaintiffs are in agreement with the State defendants' explanation of the statutory scheme under which reports are investigated and registered. *See* Pl. Mem. at 2.

**10.** NY SSL § 411.

**11.** *See* State Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def.56.1") ¶ 1. Unless otherwise indicated, the statements in Def. 56.1 have been admitted by plaintiffs.

**12.** *See id.* ¶ 2.

City of New York.[13]

## 1. Indicated Reports

The OCFS operates the SCR.[14] The purpose of the SCR is to have, in one central location, the names of all known subjects of indicated reports of child abuse and maltreatment in New York State so that the information may be used when needed to conduct appropriate investigations and database checks, either for the protection of children named in those reports or for the protection of other children who might come into contact with the subject of the report.[15] The SCR receives telephone calls alleging child abuse or maltreatment.[16] When any allegations contained in such telephone calls could reasonably constitute a report of child abuse or maltreatment of a child located in the City of New York, such allegations are immediately transmitted by the SCR to the ACS for investigation.[17]

The ACS investigates the allegations and determines whether the report of child abuse or maltreatment is "indicated" or "unfounded." [18] A report is indicated if an investigation determines that some credible evidence of the alleged abuse or maltreatment exists.[19] A report is unfounded if it is not indicated.[20] The person who is allegedly responsible for causing abuse or maltreatment to a child is referred to as the "subject of the report." [21]

The ACS notifies the SCR of the result of its investigation—whether the report of child abuse or maltreatment concerning an identified subject was determined to be indicated or unfounded.[22] The ACS does not forward the entire investigative file to the SCR at the conclusion of every investigation.[23] If the ACS determines that the report is unfounded, the SCR notifies the subject of that determination and that the report has been sealed.[24] If the ACS determines that the report is indicated, the ACS notifies the subject that the report was indicated, and that the subject of the report has the right to request an administrative hearing to challenge that determination.[25]

## 2. Requests to Amend and Seal

Subjects of indicated reports have two separate opportunities to request the SCR to amend a report from indicated to unfounded: first, upon notification that a report was indicated and second, prior to disclosure of the existence of an indicated report in response to a clearance request by a licensing or provider agency.[26] Re-

---

13. *See id.*

14. *See id.* ¶ 3.

15. *See id.* ¶ 11.

16. *See id.* ¶ 3.

17. *See id.* The information contained in the files of the SCR is not available to the general public. *See id.* ¶ 11.

18. *Id.* ¶ 4.

19. *See id.* ¶ 5.

20. *See id.* ¶ 6.

21. *Id.* ¶ 7.

22. *See id.* ¶ 8.

23. *See id.*

24. *See id.* ¶ 9.

25. *See id.* ¶ 10.

26. *See id.* ¶ 15. Provider and licensing agencies ("inquiring agency") are agencies that employ, license or otherwise authorize adults to be involved with children. Under section 424–a of the Social Security Law, provider and licensing agencies are required to request a search of the SCR database before employing, certifying, or licensing persons applying for employment, certification, or licensure in the child care field. *See id.* ¶ 29. Disclosure

quests for amendment of an indicated report made at the time the report is indicated are referred to as "422 requests" or "422 hearings."[27] Requests for amendment of an indicated report triggered by an agency's inquiry about the subject of the report are referred to as "424–a requests" or "424–a hearings."[28]

### 3. The SCR's Determination

Within ninety days after the subject of a report of child abuse or maltreatment is notified that a report is indicated, the subject may request the SCR to amend and seal the report.[29] Upon receipt of a request to amend an indicated report that was investigated by the ACS, the SCR sends a request to the ACS for all records, reports and other information maintained by the ACS pertaining to the indicated report.[30] The ACS forwards all records, reports and other information it maintains regarding the indicated report to the SCR.[31]

The SCR reviews all such materials in its possession concerning the indicated report and, after affording the ACS a reasonable opportunity to present its views, determines whether there is a fair preponderance of evidence to find that the subject committed the act or acts of child abuse or maltreatment giving rise to the indicated report.[32] If the SCR determines that there is not a fair preponderance of evidence in the record to find that the subject committed an act or acts of child abuse or maltreatment, the SCR amends the record to reflect that the allegations against the subject are unfounded and notifies the subject of the report and the local child protective service forthwith.[33] If the SCR determines that there is a fair preponderance of evidence in the record to find that the subject committed such act or acts, the SCR determines whether such act or acts could be relevant and reasonably related to employment or licensing in the child care field.[34] The SCR notifies the subject of the report of that determination and that it will refer the matter for an administrative hearing to determine, by a fair preponderance of evidence, whether the subject committed the act or acts of child abuse or maltreatment giving rise to the indicated report.[35]

---

to these agencies is done to avoid putting known subjects of an indicated report in positions where they would come in contact with children.

27. *Id.* ¶ 18. The reference is to section 422 of the Social Services law, which establishes, within the Department of Social Services, a statewide central register of child abuse and maltreatment reports.

28. *Id.* The reference is to section 424–a of the Social Services Law, which permits the Department of Social Services to disclose to an inquiring agency whether a person has been or is currently the subject of an indicated child abuse and maltreatment report on file with the statewide central register of child abuse and maltreatment.

29. *See id.* ¶ 20.

30. *See id.* ¶ 21.

31. *See id.*

32. *See id.* ¶ 22.

33. *See id.* ¶ 23.

34. *See id.* ¶ 24.

35. *See id.* ¶ 25. If the SCR Database check process identifies the applicant as a subject of an indicated report who has not had an administrative hearing in which the fair preponderance of the evidence standard was applied, the SCR does not respond to the inquiring agency. *See id.* ¶ 34. This departure from past practice is the result of litigation wherein the Second Circuit and New York Court of Appeals found a violation of due process with respect to a provision of the Social Services Law which previously required the SCR to inform inquiring agencies that an applicant is the subject of an indicated report before an

### 4. The Right to a Hearing

If the SCR does not amend an indicated report in accordance with a subject's request to do so within ninety days of receiving that request, the subject has the right to an administrative hearing to determine whether the report should be amended from indicated to unfounded.[36] Within that ninety-day period, the SCR must refer the case to the Bureau of Special Hearings ("BSH") to schedule an administrative hearing.[37] The SCR does not discontinue the review process after the referral for an administrative hearing.[38]

If, after an administrative hearing, the administrative law judge ("ALJ") determines that the evidence does not support a finding that acts of abuse and maltreatment occurred, the SCR amends the record to reflect that the report against the named subject is unfounded and sealed.[39] Subsequently, the SCR sends a letter noti-

fying an inquiring agency that the applicant/subject is not a subject of an indicated report.[40] If the ALJ determines that the evidence does support a finding that acts of abuse and maltreatment occurred, the record is amended to reflect that the allegations are retained after an administrative hearing.[41] Subsequently, the SCR sends a letter notifying an inquiring agency that the applicant/subject is known to the SCR to be a subject of an indicated report.[42] The SCR maintains identifying information about subjects of indicated reports until ten years after the eighteenth birthday of the youngest child named in the report.

### B. Plaintiffs' Allegations and the Relief Requested

#### 1. Finch

On April 4, 2001, a report against Finch was called in to the SCR Hotline.[43] On

---

administrative hearing was held. *See Valmonte v. Bane*, 18 F.3d 992, 1004 (2d Cir. 1994) ("We hold that the high risk of error produced by the procedural protections established by New York is unacceptable."); *Lee TT v. Dowling*, 87 N.Y.2d 699, 712, 642 N.Y.S.2d 181, 664 N.E.2d 1243 (1996) ("We conclude that the Due Process Clause of the Federal Constitution requires the Department to substantiate reports of child abuse by a fair preponderance of the evidence before they may be disseminated to providers and licensing agencies as a screening device for future employment."). While this has been a step in the right direction, this Court must now decide whether undue delays in the scheduling and completion of administrative hearings represents a constitutional violation in its own right.

36. *See id.* ¶ 26.

37. *See id.* "If the department, within ninety days of receiving a request from the subject that the record of a report be amended, does not amend the record in accordance with such request, the department shall schedule a fair hearing and shall provide notice of the scheduled hearing date to the subject, the statewide central register and, as appropriate,

to the child protective service or the state agency which investigated the report." NY Soc. Serv. Law § 422(8)(b)(i). The statute is silent, however, as to when a hearing must be held and completed.

38. *See id.* The State defendants claim that the SCR's continuing review benefits the subjects of reports where the SCR subsequently determines that the report is unfounded. *See id.* Plaintiffs object to this allegation because, without further discovery, they have no way of knowing whether the SCR's continuing review benefits the subjects of reports. *See* Plaintiffs' Response and Statement of Material Facts Pursuant to Local Civil Rule 56.1 ¶ 4.

39. *See* Def. 56.1 ¶ 38.

40. *See id.* ¶ 38.

41. *See id.* ¶ 39.

42. *See id.*

43. *See* Plaintiffs' Statements of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl.56.1") ¶ 1.

June 2, 2001, a report was indicated regarding inadequate guardianship.[44] On July 15, 2001, Finch requested that the indicated report be amended to unfounded.[45] On February 6, 2003, over eighteen months later, the SCR denied Finch's request to amend and seal and referred her case to the BSH for a hearing.[46] The hearing, which was scheduled by the BSH for May 15, 2003, was completed on July 22, 2003.[47] By a decision dated August 7, 2003, an ALJ found that maltreatment by inadequate guardianship was not established by a fair preponderance of the evidence and amended the indicated report to unfounded.[48]

After the report was indicated, but before the report was amended to unfounded, Finch unsuccessfully applied for employment as an Assistant Teacher and at a homeless shelter to work with mothers and daughters.[49] Finch believes she was denied employment in these two instances because her name was listed on the State Registry as being a subject of an indicated report.[50] Furthermore, in September 2001, less than two months after the birth of her grandson (Manny Moe), Finch applied for custody of the child.[51] The Family Court denied Finch's application until June 2003, when Manny Moe was finally placed in her custody.[52] It is alleged that the Family Court's initial denial was due, in part, to the existence of an indicated report.[53]

### 2. Jordan

On August 17, 2001, Jordan was advised that she was the subject of an investigation of medical neglect of her foster child, Tyasia.[54] On October 15, 2001, a report was indicated based upon medical neglect.[55] On December 21, 2001, Jordan requested that the SCR amend an indicated report to unfounded.[56] Jordan requested a hearing on March 25, 2002 and was advised, on September 11, 2003, that a hearing was scheduled for October 9, 2003.[57] The hearing was completed on June 29, 2004.[58] On August 16, 2004, the OCFS decided to retain the report on the State Registry but deemed the report as not reasonably related to child care.[59]

In June and August 2003, Jordan was hired for two separate jobs, both of which were conditioned on SCR clearance.[60]

44. *See id.* ¶ 2.

45. *See* Am. Cmpl. ¶ 46.

46. *See* Pl. 56.1 ¶ 6; Am. Cmpl. ¶¶ 47–48.

47. *See* Pl. 56.1 ¶¶ 7–8.

48. *See id.* ¶ 9; Am. Cmpl. ¶ 50.

49. *See* Am. Cmpl. ¶ 52.

50. *See id.* ¶ 53. Although clearance is not issued while a hearing is pending, the State does not respond to any requests by employers for an SCR background check. According to plaintiffs, "[s]ilence, when there is an expectation of a response, is just as telling as if there were actual notice of the SCR posting." Pl. Mem. at 10.

51. *See* Am. Cmpl. ¶ 53.

52. *See id.* ¶¶ 53, 55.

53. *See id.* ¶ 53.

54. *See* Pl. 56.1 ¶ 16; Am. Cmpl. ¶ 63.

55. *See* Pl. 56.1 ¶ 17; *id.* ¶ 65.

56. *See id.* ¶ 18; *id.* ¶ 67.

57. *See id.* ¶¶ 18–19; *id.* ¶¶ 68–69.

58. *See* State Defendants' Memorandum of Law in Support of Their Motion to Dismiss the First Amended Complaint and/or for Summary Judgment ("Def.Mem.") at 12, n. 4.

59. *See* Pl. 56.1 ¶ 20.

60. *See* Am. Cmpl. ¶¶ 71–72. The positions were a Teacher's Assistant at a private school

Both offers were withdrawn when the employers ascertained that Jordan was the subject of an indicated report.[61] Jordan still has not been able to secure employment in her chosen field due to the indicated report registered with the SCR.[62]

### 3. Ortiz

On May 22, 2003, Ortiz was notified that she was the subject of an indicated report, the date of which is unknown to her.[63] The following day, Ortiz requested that the report be expunged or amended.[64] Ortiz's request for a hearing was acknowledged by the OCFS on July 30, 2003.[65] After the SCR reviewed the record and determined not to amend and seal, an administrative hearing was scheduled for June 5, 2004.[66] Prior to the hearing, the ALJ determined that the report was unfounded and the records were sealed.[67] On June 7, 2004, Ortiz was advised that the report was amended and that she would no longer be identified as a listed subject by the SCR.[68] During the time the indicated report was pending, however, Ortiz was unable to seek child-care related employment.[69]

### 4. Requested Relief

Plaintiffs' principal grievance is that requested administrative hearings are undu-

ly delayed which, in turn, results in the failure of the SCR to timely respond to clearance requests made by inquiring agencies.[70] In constitutional terms, plaintiffs claim that the failure of the State defendants to timely schedule an administrative hearing after a subject, who has been placed on the State Registry, has made a timely request for amendment of an indicated report constitutes an unlawful and unconstitutional deprivation of plaintiffs' liberty and property rights, without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.[71]

In addition to money damages, plaintiffs seek a temporary and permanent injunction enjoining the State defendants from failing to hold prompt 422 and 424–a hearings.[72] Plaintiffs also seek a judgment declaring the policies and practices of the State defendants in failing to timely provide such hearings to be unconstitutional.[73] Plaintiffs further seek a temporary and permanent injunction and a declaratory judgment declaring that the State defendants' policy and practice of failing to promptly provide subjects of an indicated report a copy of the investigative report, or the factual basis of the indicated report, violates the due process clause of the Unit-

---

in Harlem, New York and an Assistant Supervisor in a group home at the Children's Village located in Westchester County. *See id.*

61. *See id.*

62. *See id.* ¶ 74.

63. *See id.* ¶ 58. In April 2003, Ortiz applied for an internship with Leake & Watts, which subsequently requested an SCR clearance, thereby triggering notice of the indicated report. *See* Pl. 56.1 ¶¶ 22–23.

64. *See* Am. Cmpl. ¶ 8.

65. *See* Pl. 56.1 ¶ 24.

66. *See* Am. Cmpl. ¶ 61.

67. *See id.*

68. *See* Pl. 56.1 ¶ 27.

69. *See* Am. Cmpl. ¶ 62.

70. *See* Pl. Mem. at 2.

71. *See* Am. Cmpl. ¶ 101.

72. *See* Cross–Motion ¶ 1; Am. Cmpl. ¶ 109(b) & (c).

73. *See* Am. Cmpl. ¶ 109(b) & (c).

ed States Constitution.[74]

## II. LEGAL STANDARDS

### A. Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary...."[75] When a complaint is attacked by a Rule 12(b)(6) motion to dismiss, the plaintiff need not provide "detailed factual allegations."[76] To survive a motion to dismiss, it is enough that the complaint "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."[77]

The task of the court is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[78] When deciding a defendant's motion to dismiss under Rule 12(b)(6), a judge must "accept as true all of the factual allegations contained in the complaint"[79] and "draw all reasonable inferences in plaintiff's favor."[80]

While there are legitimate reasons to dismiss a case under Rule 12(b)(6), "[t]he case cannot, however, be dismissed on the ground that petitioner's allegations of harm were too conclusory to put these matters in issue."[81] Thus, the court must take the plaintiff's allegations as true, but "the claim may still fail as a matter of law if it appears ... that the plaintiff can prove no set of facts in support of its claim which would entitle [him] to relief, or if the claim is not legally feasible."[82]

### B. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[83] An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[84] A fact is material when it " 'might affect the outcome of the suit under the governing law.' "[85] "It is the movant's burden to show that no genuine factual dispute exists."[86]

---

**74.** *See id.* ¶ 109(d).

**75.** *Erickson v. Pardus,* —— U.S. ——, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

**76.** *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).

**77.** *Id.*

**78.** *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 176 (2d Cir.2004) (quotation marks and citation omitted).

**79.** *Bell Atlantic,* 127 S.Ct. at 1975 (citation omitted).

**80.** *Ofori–Tenkorang v. American Int'l Group, Inc.,* 460 F.3d 296, 298 (2d Cir.2006).

**81.** *Erickson,* slip op. at 7 (2007).

**82.** *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 457 F.Supp.2d 455, 459 (S.D.N.Y. 2006) (citing *Allaire Corp. v. Okumus,* 433 F.3d 248, 250 (2d Cir.2006)).

**83.** Fed.R.Civ.P. 56(c).

**84.** *Williams v. Utica Coll. of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir.2006) (quoting *Stuart v. American Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir.1998)).

**85.** *Bouboulis v. Transport Workers Union of Am.,* 442 F.3d 55, 59 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

**86.** *Vermont Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than show that there is " 'some metaphysical doubt as to the material facts,' "[87] and it " 'may not rely on conclusory allegations or unsubstantiated speculation.' "[88] However, " 'all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.' "[89]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[90] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.' "[91] Summary judgment is therefore inappropriate "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."[92]

## C. Qualified Immunity

The doctrine of qualified immunity shields government officials from civil liability as long as " 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "[93] Qualified immunity balances "the need ... to hold responsible public officials exercising their power in a wholly unjustified manner and ... [the need] to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury."[94] Because qualified immunity "is 'an immunity from suit rather than a mere defense from liability ... it is effectively lost if a case is erroneously permitted to go to trial.' "[95] Accordingly, the Supreme Court has repeatedly " 'stressed the importance of resolving the question of qualified immunity at the earliest possible stage in litigation.' "[96]

87. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

88. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir.2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

89. *McClellan*, 439 F.3d at 144 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

90. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir.2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

91. *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997)).

*Accord Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

92. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir.2002) (citing *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir.2000)).

93. *Velez v. Levy*, 401 F.3d 75, 100 (2d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

94. *Locurto v. Safir*, 264 F.3d 154, 162–63 (2d Cir.2001).

95. *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

96. *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

When assessing a claim of qualified immunity, a court must first determine whether, "taken in the light most favorable to the party asserting injury ... the officer's conduct violated a constitutional right." [97] If no constitutional right is violated, no further inquiry is necessary. However, if a constitutional violation is proven, "the next ... step is to ask whether the right was clearly established." [98] Qualified immunity applies unless the official's conduct violated a clearly established constitutional right.

Once a plaintiff establishes that a defendant's conduct infringed a constitutional right, he must then prove that at the time the infringement took place, the law prohibiting defendant's conduct was clearly established. Clearly established means: " '(1) the law is defined with reasonable clarity, (2) the Supreme Court or Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.' " [99] If an official's conduct did not violate clearly established law, that official is entitled to qualified immunity.

"Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." [100] "A[n] [official]'s actions are objectively unreasonable, and therefore are not entitled to immunity, when no officer of reasonable competence could have made the same choice in similar circumstances." [101]

## III. DISCUSSION

### A. Unconstitutional Deprivation of a Fundamental Liberty Interest [102]

#### 1. The Protected Liberty Interest

■ Plaintiffs argue that the delay in the scheduling of administrative hearings—up to two years after a request has been made—represents an unconstitutional deprivation of the fundamental liberty interest to pursue one's employment of choice and the foster care licensure necessary to raise a biologically related child. The constitutional analysis begins with determining whether a protected liberty or property interest exists and, if so, whether the procedures in place adequately safeguard that interest. [103] The State's highest

---

97. *Id.*

98. *Id.*

99. *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir.2003) (quoting *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998)).

100. *Anthony v. City of N.Y.*, 339 F.3d 129, 137 (2d Cir.2003) (citing *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995)).

101. *Id.* at 138.

102. Plaintiffs have not contested the majority of the statements made in the State defendants' Statement of Material Facts describing the operations of the SCR. However, the State defendants have not addressed delays ranging from twelve to twenty-three months in sched-

uling administrative hearings, the reasons for such delay, or the impact on the subjects of indicated reports. Therefore, the following constitutional analysis is necessary to determine whether plaintiffs have stated a legally cognizable claim and/or whether there exists material issues of fact that preclude summary judgment.

103. *See Valmonte*, 18 F.3d at 998 ("To formulate a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest. *See* U.S. Const. amend. XIV, § 1. The Supreme Court has established that '[w]e examine procedural due process questions in two steps: the first asks

court has already held that the State's action in listing subjects in the Registry impairs a protected liberty interest.

In sum, the inclusion of petitioners in the Central Register not only harmed their personal reputations, it affected their present employment and effectively foreclosed them from any future employment in the child care area. It signified not that petitioners had performed poorly in their prior jobs or suffered from personal inadequacies but that they presented a potential danger to children or, worse, that they might be capable of criminal conduct toward them. If a future provider or licensing agency did not accept that as so, it had to specify in writing why it believed the subject should be employed or licensed, the information in the Central Register notwithstanding.[104]

■ Failure to clear a prospective employee in a timely fashion must satisfy the "stigma plus" test in order to be considered a constitutional violation.[105] In order to rise to the level of "stigma plus," the stigma resulting from the defamatory character of the listing must be "combined with an alteration in the individual's legal status." [106] The requirement that potential employers consult the list of indicated child abusers before hiring prospective employees results in an employer learning of an applicant's inclusion in the Registry, by operation of law.[107] This is true whether SCR responds with notice of indication or does not respond at all.

## 2. Procedural Due Process

When the existence of a property or liberty interest is established, a court must then decide what process is due.[108] The Supreme Court has held

that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[109]

Due process is "flexible and calls for such procedural protection as the particular situation demands." [110] While it is true that due process cannot be precisely defined

---

whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.' ") (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citation omitted)).

**104.** *Lee T.T.*, 87 N.Y.2d at 709, 642 N.Y.S.2d 181, 664 N.E.2d 1243. A foster parent's licensure, together with the right to adopt, are also protected liberty interests. *See id.*

**105.** *See Valmonte*, 18 F.3d at 999 ("[In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)], the Court held, loss of reputation must be coupled with some other

tangible element in order to rise to the level of a protectible liberty interest. We have previously interpreted this holding to mean that 'stigma plus' is required to establish a constitutional deprivation.") (citations omitted).

**106.** *Paul*, 424 U.S. at 708–09, 96 S.Ct. 1155.

**107.** *See Valmonte*, 18 F.3d at 1001.

**108.** *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995).

**109.** *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**110.** *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

and does not possess a "technical conception with a fixed context unrelated to time, place and circumstances," [111] the importance of the deprivation is of critical significance in calculating the process that is due.[112]

■ The State defendants describe the administrative review process as a pre-deprivation hearing because there is no prior affirmative disclosure of the indication. Plaintiffs argue that the impediment occurs immediately upon the posting of the name in the Registry when the OCFS, through inaction or silence, ignores a requested SCR background check. Regardless of the label, the right to clear one's name at a due process hearing is the essence of due process in a "stigma plus" case.[113]

■ A fundamental principle of due process is that a deprivation of life, liberty or property must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." [114] Ordinarily, this requires a pre-deprivation hearing as only a pre-deprivation procedure can prevent wrongful losses from occurring.[115] Where there are adequate post-deprivation procedures, however, a State may be excused from providing pre-deprivation process

when exigent circumstances require that it act quickly.[116]

There is no magic line demarcating constitutional versus unconstitutional delay.[117] The acceptable duration of delay is determined by analyzing "the importance of the private interest and the harm to this interest occasioned by the delay and its relation to the underlying government interest; and the likelihood that the interim decision may have been mistaken." [118] Considering the important liberty interest of pursuing one's vocation of choice, a jury may find that delays of between twelve to twenty-three months are constitutionally unacceptable. Accordingly, plaintiffs' constitutional violation claims cannot be dismissed for failure to state a claim or by summary judgment.

## B. Individual State Defendants in Their Official Capacities

The Eleventh Amendment prohibits the "Judicial power of the United States" from extending to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." [119] This jurisdictional bar

---

**111.** *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

**112.** *See Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**113.** *See Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

**114.** *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

**115.** *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (informal pre-deprivation process is only sufficient if the government provides a reasonably prompt post-discharge evidentiary hearing).

**116.** *See Gilbert v. Homar*, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997); *Barry v. Barchi*, 443 U.S. 55, 66, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979).

**117.** *See Rockland Medilabs. Inc. v. Perales*, 719 F.Supp. 1191, 1202 (S.D.N.Y.1989).

**118.** *FDIC v. Mallen*, 486 U.S. 230, 242, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988).

**119.** U.S. Const. amend. XI. Although the language of the Eleventh Amendment forecloses suits brought by citizens of another state, "it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Employees of the Dep't of Pub. Health & Welfare, State of Missouri v.*

also immunizes a state entity that is an "arm of the State," [120] including a state official acting in his or her official capacity.[121]

■ Thus, it is a well-settled rule that the Eleventh Amendment bars federal courts from entertaining a suit against a State agency as well as the State itself.[122] Moreover, where State officials are sued in their official capacities, Eleventh Amendment immunity applies if "the state is the real, substantial party in interest." [123] Hence, dismissal under the Eleventh Amendment is appropriate because a suit against a State official in his official capacity is, in effect, a suit against the State itself, which is barred.[124] Therefore, the claims for money damages against Commissioner Johnson and Director Peters in their official capacities must be dismissed.

## C. Individual State Defendants in Their Individual Capacities

■ The Eleventh Amendment does not bar a suit in law or equity against a State official in his or her individual capacity.[125] The State defendants maintain that all claims against Commissioner Johnson and Director Peters in their individual capacities should be dismissed for lack of person-

al involvement or, in the alternative, on qualified immunity grounds.

### 1. Personal Involvement

■ Plaintiffs allege that Commissioner Johnson and Director Peters, in their supervisory capacities, knew or should reasonably have known "that their actions would cause prospective employers and licensors to deprive plaintiffs of their constitutional right to liberty and property" and that "the delay in scheduling hearings would strongly discourage if not prohibit the employment or licensing of the plaintiffs." [126] Drawing all reasonable inferences in plaintiffs' favor, it may be reasonably inferred that Johnson, in his capacity as Commissioner of OCFS, and Peters, as Director of the SCR, received regular reports and were aware of the egregious delays in scheduling and completing hearings and the high expungement rate. Damage suits against supervisory defendants may be brought when there is personal involvement in the unconstitutional conduct. A supervisor may be found personally involved in a constitutional violation in several different ways.

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a

---

*Department of Pub. Health & Welfare, State of Missouri,* 411 U.S. 279, 280, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Duhne v. New Jersey,* 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); *Parden v. Terminal R. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964)).

**120.** *Northern Ins. Co. of N.Y. v. Chatham County, Ga.,* 547 U.S. 189, 126 S.Ct. 1689, 164 L.Ed.2d 367 (2006).

**121.** *See Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

**122.** *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (in the absence of consent,

a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment).

**123.** *Id.* at 101.

**124.** *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

**125.** *See Hafer,* 502 U.S. at 27–28, 112 S.Ct. 358.

**126.** Am. Cmpl. ¶ 98.

prerequisite to an award of damages under § 1983. The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.[127]

■ When a complaint sets forth a viable theory of supervisory liability, summary judgment prior to discovery should be denied.[128] Plaintiffs must be given an opportunity to show that the individual defendants were aware that the policy and practice of delaying administrative hearings posed a "pervasive and unreasonable threat of constitutional injury" and that Johnson and Peter's responses were so "inadequate as to show deliberate indiffer-

ence or tacit authorization of such offensive practice."[129] Accordingly, plaintiffs' claims for damages against Commissioner Johnson and Director Peters in their individual capacities cannot be dismissed for lack of personal involvement on their part. There is, however, an alternative ground for dismissal, namely, qualified immunity.

## 2. Qualified Immunity

■ The State defendants argue that Commissioner Johnson and Director Peters supervised employees who carried out policies adopted by the OCFS to comply with court decisions in *Valmonte v. Bane*,[130] *Lee TT v. Dowling*,[131] and *Walter W. v. New York State Department of Social Services*.[132] According to the State defendants,

> the conduct that was found to be a constitutional violation in *Valmonte* was the disclosure of plaintiff's status as the subject of an indicated report *before* she was given the opportunity to have a hearing that comported with a standard that satisfied due process requirements, the "fair preponderance of evidence" standard. The procedures adopted by the OCFS subsequent to *Valmonte* pre-

---

**127.** *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (quotation marks and citations omitted).

**128.** *See Gibson v. City of Chicago*, 910 F.2d 1510, 1523 (7th Cir.1990). Apparently, there has been only limited discovery in this case, consisting entirely of declarations from the plaintiffs, plaintiffs' counsel, an employee of the SCR, and the State defendants' counsel. This appears to be the source of some confusion regarding the proper standard to apply to certain claims. *Compare* Pl. Mem. at 21 ("The complaint has sufficiently alleged personal involvement of Peters and Johnson to withstand a motion to dismiss prior to discovery being completed") *with* Def. Mem. at 22 ("Commissioner Johnson and Director Peters, Individually, Are Entitled to Summary

Judgment in Their Favor Due to a Lack of Personal Involvement"). Because none of the factual allegations included in the State defendants' Statement of Material Facts concern the personal involvement of Johnson or Peters, I will apply the motion to dismiss standard to the instant claims.

**129.** *Velazquez v. City of New York*, No. 99 Civ. 3594, 2000 WL 325683, at *9 (S.D.N.Y. Mar.28, 2000).

**130.** 18 F.3d 992 (2d Cir.1994).

**131.** 87 N.Y.2d 699, 642 N.Y.S.2d 181, 664 N.E.2d 1243 (1996).

**132.** 235 A.D.2d 592, 651 N.Y.S.2d 726 (3d Dep't 1997).

vent repetition of the conduct that *Valmonte* found violated the Constitution.[133]

With regard to whether clearly established law was violated, the State defendants state:

> Even if this Court finds that the remedies undertaken by OCFS to comply with court decisions somehow violate the plaintiffs' constitutional rights, that determination will be the first notice to supervisory officials in "the specific context of the case" that the delays that have resulted from compliance with other court decisions in and of themselves constitute a separate constitutional violation. . . . There was no clear statement that delays incurred while carrying out *Valmonte*-related policy changes violate the Constitution of the United States.[134]

The State defendants are correct. Until today, no court has held that the inordinate delay in scheduling administrative hearings may itself violate a listed person's right to due process. Accordingly, the individual State defendants were never put on notice that such delays could result in a constitutional violation. As the law regarding unconstitutional delay was not clearly established, the individual State defendants cannot be held responsible for violating that law. Therefore, on the basis of qualified immunity, the claims for money damages against the individual State defendants are hereby dismissed.

### D. Injunctive Relief

 The Eleventh Amendment does not preclude suits against State officers in their official capacity seeking prospective injunctive relief.[135] Under *Ex parte Young*, acts of State officers that violate federal constitutional rights are deemed not to be acts of the State and may be the subject of injunctive or declaratory relief in federal court.[136] Whether a plaintiff's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a State is a "straightforward inquiry" that asks " 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' "[137] Here, the inordinate delays in the scheduling of administrative hearings are likely to continue, to the detriment of potential class members. Accordingly, plaintiffs' claims seeking prospective injunctive relief against Commissioner Johnson and Director Peters fall within the above exception and cannot be dismissed.[138]

### E. References to Race and Ethnicity

The references to race and ethnicity contained in paragraphs one and two of

---

133. State Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the First Amended Complaint and/or for Summary Judgment at 6 (emphasis in original).

134. *Id.*

135. *See Ex parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

136. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

137. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152

L.Ed.2d 871 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)).

138. However, to the extent plaintiffs seek declaratory relief regarding the State defendants' past conduct, such claims must be dismissed because the Eleventh Amendment " 'does not permit judgments against state officers declaring that they violated federal law in the past.' " *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (quoting *Green*, 474 U.S. at 73, 106 S.Ct. 423).

the Complaint are struck as immaterial pursuant to Federal Rule of Civil Procedure 12(f). Although paragraph one identifies plaintiffs as African American and Hispanic, and paragraph two alleges that the State defendants' purported policies have "an overwhelming discriminatory impact on low-income Hispanic and African–American families and communities," there are no other references to the plaintiffs' race or ethnicity in the Complaint. The allegations concerning the State defendants' policies are equally applicable to all persons who become subjects of indicated reports of child abuse or maltreatment, not just members of racial and ethnic minorities.

Although motions to strike are not easily granted, deletion of the words "who are African American and Hispanic" from paragraph one of the First Amended Complaint and deletion of the words "an overwhelming discriminatory impact on low-income Hispanic and African–American families and communities" from paragraph two of the First Amended Complaint does not affect the gravamen of the Complaint. Rather, this deletion limits the possibility that the trier of fact will be distracted by immaterial issues. The State defendants' request to strike is granted.

### F. Plaintiffs' Requested Injunctive Relief

Plaintiffs ask this Court to enjoin the State defendants from failing to hold prompt 422 and 424–a hearings. The Second Circuit has summarized the standard to be applied in determining whether to grant a preliminary injunction as follows:

> In most cases, a party seeking a preliminary injunction must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor. *See, e.g., Genesee Brewing Co. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997). One exception to the ordinary standard is that, where a preliminary injunction is sought against government action taken in the public interest pursuant to a statutory or regulatory scheme, the less-demanding "fair ground for litigation" standard is inapplicable, and therefore a "likelihood of success" must be shown. *See International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 70 (2d Cir.1996). This higher standard reflects judicial deference toward "legislation or regulations developed through presumptively reasoned democratic processes." *Able v. United States,* 44 F.3d 128, 131 (2d Cir.1995) (per curiam). An even more rigorous standard—requiring a "clear" or "substantial" showing of likelihood of success—applies where "(i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Tom Doherty Assocs. v. Saban Ent., Inc.,* 60 F.3d 27, 33–34 (2d Cir.1995).[139]

It is not yet clear whether plaintiffs can satisfy this standard. The topic of preliminary injunctive relief will be addressed at the next conference.

### IV. CONCLUSION

In sum, the following claims are dismissed: (1) all claims against the OCFS;

---

**139.** *Forest City Daly Hous., Inc. v. Town of North Hempstead,* 175 F.3d 144, 149–50 (2d Cir.1999).

(2) all claims brought under the Ninth Amendment of the United States Constitution; (3) claims for money damages against the individual State defendants in their official capacities; (4) claims for money damages against the individual State defendants in their individual capacities; and (5) claims seeking injunctive relief for past conduct. The claim for prospective injunctive relief against the individual State defendants survives. The State defendants' motion for summary judgment is denied but their motion to strike is granted. Plaintiffs' request for preliminary injunctive relief will be considered at the conference scheduled for July 12, 2007 at 4:30 p.m. in Courtroom 15C. The Clerk of the Court is directed to close the instant motions [Document Nos. 27 and 31].

**SO ORDERED.**