**Marie MOORE, Plaintiff,**

v.

**DIVERSIFIED COLLECTION SERVICES, INC., Defendant.**

**No. 07–CV–0397 (ENV)(VVP).**

United States District Court, E.D. New York.

Jan. 19, 2012.

Amir J. Goldstein, Amir J. Goldstein, Esq., New York, NY, for Plaintiff.

Jay M. Winston, Winston & Winston P.C., New York, NY, for Defendant.

*MEMORANDUM AND ORDER*

VITALIANO, District Judge.

Plaintiff Marie Moore ("Moore") commenced this action against defendant Di-

versified Collection Services, Inc. ("Diversified") pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA" or "the Act"). Moore asserts that Diversified violated four FDCPA provisions, §§ 1692d, 1692e, 1692f, and 1692g, flowing from its attempts to collect a debt Moore owed to the United States Department of Education ("DOE"). Diversified interposed a counterclaim against Moore for attorney's fees and costs under § 1692k of the Act. After both parties moved to dismiss, this Court granted Diversified's motion to dismiss Moore's claims under §§ 1692d, 1692f, and 1692g, denied the motion as to Moore's claim under § 1692e, and dismissed Diversified's counterclaim.[1] Diversified now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies the motion.

## I. BACKGROUND

The following facts and background information are drawn from the complaint and the parties' submissions. The facts are construed, as they must be in the summary judgment context, in the light most favorable to the nonmoving party. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 456 (2d Cir.2007). Any relevant factual disputes are noted.[2]

At some time prior to the commencement of this action, Moore incurred a debt to DOE and DOE retained Diversified to collect it. Moore alleges that Diversified sent her letters in an effort to collect the debt, including one dated June 27, 2006 (the "June letter"). Moore asserts that the June letter contains various threats, including that legal action could be taken against her and that her wages might be garnished, if she did not pay the debt. The June letter indicates that Moore's obligation totaled $4539.86—the sum of a principal balance of $2573.30, $1058.59 in interest, and $907.97 in fees and costs.

On October 17, 2006, DOE sent a letter to Moore's then-employer advising that Moore had been identified as owing a delinquent nontax debt to the United States, and therefore was subject to wage garnishment under the Debt Collection Improvement Act (the "October letter"). The October letter enclosed an order directing the employer to withhold a portion of Moore's pay each pay period and to forward those amounts to DOE. The employer subsequently forwarded the letter and wage garnishment order to Moore but apparently did not garnish her wages at that time.

In an effort to avoid further complications with regard to the wage garnishment, Moore contacted Diversified and attempted to settle the outstanding debt. Moore alleges that she spoke with an agent of Diversified named Jennifer Woods ("Woods") on November 14, 2006 (the "November phone call") and discussed settlement of the obligation. According to

---

1. On June 26, 2009, the Court decided the Rule 12 motion and issued its Memorandum and Order. *Moore v. Diversified Collection Services, Inc.,* No. 07–cv–397, 2009 WL 1873654 (E.D.N.Y. June 26, 2009). Familiarity with this decision is presumed.

2. Diversified argues that because it filed a Statement of Material Facts pursuant to Local Rule 56.1 to which Moore did not respond, the Court should accept as true its uncontested assertions. Nonetheless, "in recognition of the law's preference for resolution of disputes on their merits and not through technicalities," the Court will conduct its own review of the record in deciding the motion. *See Pergament v. Fed. Express Corp.,* No. 2:03–cv–1106, 2007 WL 1016993, at *1 (E.D.N.Y. Mar. 30, 2007).

Moore, she asked Diversified if she could settle her debt for a reduced amount and told Woods that DOE had previously provided her with documentation indicating that she could satisfy the obligation for $3611.58. Moore claims that Woods told her that she could settle the debt by paying yet another sum, $3631.89—the sum of the principal balance and interest listed in the June letter—and allegedly promised that her wages would not be garnished if she did so. (*See* Compl. ¶¶ 15–18; Moore Aff. ¶¶ 9–11, Pl.'s Mem. in Opp'n to Summ. J., Ex. H.)[3] Moore avers that she agreed and advised Woods that she would pay the settlement amount using a voucher authorized by AmeriCorps, an organization of which Moore was a member. Later that day, allegedly in reliance on her conversation with Woods, Moore transmitted to Diversified the voucher, endorsed in the amount of $3631.89, with the notation "[p]lease consider this amount of $3631.89 paid in full." (Compl. ¶ 20; Pl.'s Mem. in Opp'n to Summ. J., Ex. A.)[4] According to Diversified's records, however, the payment was not applied to Moore's outstanding balance until December 26th. (Pl.'s Mem. in Opp'n to Summ. J., Ex. G.)

Shortly after the telephone call with Woods, on November 25, 2006, Moore's employer received another letter from DOE (the "November letter"). The November letter reminded the employer of the earlier wage garnishment order, informed the employer that DOE had not received any payment in response to that order, and indicated that Moore still owed a balance of approximately $4600. The November·letter instructed the employer to withhold and remit portions of Moore's wages to DOE in accordance with the previous order and directed any inquiries concerning the letter to Diversified.

On or about December 22, 2006, Moore's salary was garnished in the amount of $90.59, allegedly by, or at least at the direction of, Diversified. (*Id.*, Ex. B.) Several days later, on December 26th, Moore contacted Diversified to inquire why the voucher payment had not yet been credited to her account and to complain that her wages had been garnished. (*Id.*, Ex. G.) Upon Moore's request, Diversified sent her a letter itemizing her payment history (the "December letter"). The letter indicated that Moore still owed a debt to DOE and stated that Diversified would "hold [Moore's] account for ten (10) days" from the date of the respective letter "to give [Moore] the opportunity to evaluate this information and to make arrangements to repay this obligation." The letter also warned that "[f]ailure to respond within the allotted time may result in your account being reviewed for possible administrative wage garnishment." (*Id.*, Ex. C.) That same day, Diversified applied the voucher payment to Moore's account. (*Id.*, Ex. G.)

Following the December 26th communication, Moore says she attempted to contact Diversified about the debt and the

---

3. Defendant disputes that any such offer was made. In support of this contention, defendant primarily relies on its records of Moore's account, which contain an entry for the phone call, noting that Moore wished to apply the AmeriCorps voucher against the account as payment in full, but—they argue—contain no mention of either this offer being made to Moore or, alternatively, of Woods' accepting Moore's proposal. (*See* Def.'s Mem. in Supp. of Summ. J. 10.)

4. Moore attached to her complaint the cover page of her facsimile transmission to Diversified and a copy of the endorsed AmeriCorps voucher. While the cover page is dated November 14, 2006, it appears from the face of the signed AmeriCorps voucher that Moore dated this document several weeks earlier, on October 28, 2006.

garnishment several more times. According to the company's records, Moore telephoned Diversified twice on December 27, 2006, asking why her wages had been garnished and why any amount was left owing on the account following the voucher payment she had made in November. (*Id.*) On January 2, 2007, Moore left defendant a voicemail, again inquiring about the garnishment. (*Id.*) The same day, she also sent Woods a faxed letter, which repeated Moore's understanding of the November phone call, ("[P]er our conversation on 11/14/2006 I asked if I could settle my account with you we agreed and I sent you the amount of $3,631.89"), and also objected to the outstanding balance and wage garnishment, ("So why is there and additional amount owe of $128.68. Also my wages were garnished in the amount of $93.00 please return this amount to me as it was taken in error because I have repaid this account on 12/26/2006."). (*Id.*, Ex. D). In response, Diversified sent Moore another payment itemization letter, dated January 2, 2007 (the "January 2nd letter"). Like the December letter, the January 2nd letter stated that Moore still owed a debt to DOE, that Diversified would hold her account for 10 days in order to give her the opportunity to evaluate the information and to make arrangements for repayment, and that failure to respond within the 10 days could result in her account being reviewed for possible administrative wage garnishment. (*See id.*, Ex. C.)

On or about January 5, 2007, Moore's salary was garnished a second time, again in the amount of $90.59. (*See id.*, Ex. B.) According to Moore, as corroborated by Diversified's account records, she telephoned defendant on January 17th to complain again about the garnishments,

reiterating her belief that the voucher payment had settled the debt. (*See id.*, Ex. G.) Several days later, on January 24th, apparently on Moore's request, Diversified sent Moore yet another letter (the "January 24th letter"), containing the same information as the December and January 2nd letters. (*See id.*, Ex. C.)

Following several more telephone calls to Diversified, (*see* Horn Deck, Attach. J), Moore then filed an objection to the garnishments with DOE. On or about April 20, 2007, DOE sent Moore a letter presenting its findings that her account had been satisfied and, accordingly, cancelling the garnishment order. (*See* Pl.'s Mem. in Opp'n to Summ. J., Ex. E.) On or about May 4th, DOE issued Moore a partial credit for $52.96. (*See id.*, Ex. F.)[5]

Moore subsequently commenced this action, alleging that the amount of her debt, as represented by Diversified, was arbitrary and capricious and unlawfully inflated in order to harass her, that Diversified made misrepresentations in connection with its purported settlement offer, and that it garnished her wages despite the settlement, thereby violating FDCPA.

On May 7, 2010, following the completion of discovery, Diversified moved for summary judgment, claiming it was entitled to judgment as a matter of law on Moore's remaining claim.

## II. DISCUSSION

The Court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but rather to "determine whether there *are* issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir.1995) (internal citations omitted). The moving party

---

**5.** It is not evident from the record why the credit was for only $52.96, and not for the full amount of the garnishment.

bears the burden of demonstrating that there is no genuine issue as to any material fact, *see, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005), and the Court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion, *see, e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 83 (2d Cir.2004); *Hetchkop v. Woodlawn at Grassmere, Inc.,* 116 F.3d 28, 33 (2d Cir.1997) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

■■■■ Moore claims that, by falsely representing that her payment of $3631.89 would constitute full satisfaction of the debt, thereby preventing her wages from being garnished, Diversified violated § 1692e of FDCPA, which prohibits the use of "any false, deceptive, or misleading representation" in a communication by a debt collector with a debtor. 15 U.S.C. § 1692e. In order to determine whether a communication runs afoul of FDCPA, courts in the Second Circuit apply a standard reflecting the perspective of the "least sophisticated consumer." *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 90 (2d Cir.2008). The purpose of the least sophisticated consumer standard is to ensure that FDCPA protects "the gullible as well as the shrewd." *Id.* Because FDCPA is a strict liability statute, a plaintiff need not show that the debt collector intended to deceive in order to prevail on a claim that a communication is misleading. *See Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 63 (2d Cir.1993). However, in applying that standard, a court must be careful to preserve the concept of reasonableness, for the Act does not aid a plaintiff "whose claims are based on 'bi-

zarre or idiosyncratic interpretations' " of the debt collection communications she receives. *Jacobson,* 516 F.3d at 90 (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1320 (2d Cir.1993)).

■■■■ In its Memorandum and Order denying Diversified's motion to dismiss Moore's § 1692e claim, the Court warned that, "if, at the summary judgment stage, Moore can do no more than she has done here—if she cannot point to a *genuine* issue of material fact concerning the representations allegedly made by Woods on behalf of Diversified—her claim will be dismissed." *See Moore,* 2009 WL 1873654, at *4. Moore has now supplemented the record regarding the voucher payment containing the "paid in full" notation, which was attached to the complaint, with several additional documents: first, her sworn affidavit, testifying that during the November phone call, she negotiated with Woods, who advised her that the account could be settled in full for the sum of $3631.89, (*see* Pl.'s Mem. in Opp'n to Summ. J., Ex. H); second, Diversified's account records, which indicate that during the November phone call, Moore requested that the voucher payment be accepted as payment in full, and that in at least two subsequent phone calls to Diversified—on December 27, 2006 and January 17, 2007—Moore indicated her understanding that her debt had been settled, (*see id.,* Ex. G); and third, her January 2nd letter to Woods, which also reflects this understanding, (*see id.,* Ex. D).

Resolving all ambiguities and drawing all permissible factual inferences in Moore's favor, as it must at summary judgment, the Court finds that the evidence adduced on motion creates a genuine issue of material fact as to the key question of what was said during the November phone call. Considering Moore's affidavit and these other documents, to-

gether with Moore's submission of the AmeriCorps voucher as payment in full, a reasonable jury could certainly conclude that Moore genuinely believed that the voucher payment had settled her debt, that this belief was based on Woods' representations during the November phone call, and that, notwithstanding these representations, Diversified did not mark Moore's account satisfied after receiving her payment, but instead subsequently threatened and did garnish her wages. This is not to say, of course, that Woods actually made these representations. In fact, defendant disputes this story, arguing that there is no record of any settlement offer being made to Moore, much less one accepted—and so it may be. But that is for the finder of fact to determine, not the summary judgment court.

In reaching this holding, the Court rejects defendant's argument that alleged inconsistencies in Moore's account of how the settlement figure of $3631.89 was arrived at make summary judgment appropriate. As per Diversified's reconstruction, Moore, it says, alleged in her complaint that DOE had previously provided documentation indicating payment of $3611.58 would settle the debt—documentation which DOE used to calculate the $3631.89 figure—but then testified at her deposition that she herself chose the amount of $3631.89 from letters she received from DOE. Further, defendant argues that in her affidavit opposing summary judgment, she represented that Woods supplied this figure. (*See* Def.'s Mem. in Supp. of Summ. J. 8; Def.'s Reply Mem. in Supp. of Summ. J. 3.) Consequently, defendant presses, Moore cannot rely on her affidavit to avoid summary judgment, since " '[i]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment,' "

because " 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.' " (Def.'s Reply Mem. in Supp. of Summ. J. 3 (quoting *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987); *Henneberger v. Cohen & Slamowitz, LLP*, No. 07–cv–804, 2010 WL 1405578, at *4 (W.D.N.Y. Mar. 31, 2010)).)

It is far from clear, however, that Moore's affidavit actually contradicts her deposition testimony or the allegations averred in her complaint. Indeed, resolving the apparent ambiguities in Moore's testimony in her favor, it is at least plausible that DOE supplied the $3611.58 figure, which provided the starting point for the $3631.89 amount that was—regardless of who first actually proposed it during the negotiation—as Moore consistently contends, agreed to during the course of the November phone call. Read in this favorable light, there is no substantive inconsistency, only conflicts in recalling the details of how the material event unfolded, not whether the material event happened, and thus no reason to ignore the affidavit. See *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir.2000) (noting that an affidavit need not be ignored for the purposes of summary judgment "if the deposition and the later sworn statement are not actually contradictory"); *cf. Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) ("[A] material issue of fact may be revealed by . . . subsequent sworn testimony that amplifies or explains, but does not merely contradict . . . prior testimony. . . ."). Of course, at trial, defendant may argue that these alleged inconsistencies undermine Moore's credibility, but that is a matter for the finder of fact. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" at summary judgment).[6]

In any event, even if the Court were to find plaintiff's affidavit inconsistent with both her deposition testimony and the allegations in her complaint, the inconsistency would not warrant ignoring the affidavit for the purpose of determining whether summary judgment is appropriate. While a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony, *see Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996), the alleged inconsistency to which defendant objects is not responsible for creating the issue of fact that precludes summary judgment here. Rather, the material question is whether or not Woods represented that a payment of $3631.89 would settle the debt and prevent Moore's wages from being garnished. How this figure was arrived at is beside the point. Moore has consistently said throughout that a deal had been struck, which Diversified denies.

Consequently, any inconsistency regarding its derivation—assuming there was an accepted settlement—provides no reason to ignore Moore's affidavit. Moreover, even if the Court were to ignore the affidavit, the other documents Moore has provided create a sufficient question as to what was said during the November phone call to preclude summary judgment.[7]

## III.  CONCLUSION

For the foregoing reasons, Diversified's motion for summary judgment is denied. The parties are directed to contact United States Magistrate Judge Viktor P. Pohorelsky to finalize trial preparations.

**SO ORDERED.**

---

**6.** Defendant also argues that plaintiff's account is incredible, since not only is there no business record of the deal, there is also no good business reason that Diversified would intentionally misrepresent the amount required to settle the debt in order to harass Moore and cause her wages to be garnished. (Def.'s Reply Mem. in Supp. of Summ. J. 3–4.) Nonetheless, under FDCPA, Moore need not show that Diversified intended to deceive her in order to prevail on her claim that the November phone call was misleading. *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir.1993). Accordingly, all that is required for the claim's sufficiency is that Diversified made such misrepresentations.

**7.** In her memorandum opposing summary judgment, Moore also claims that the three letters sent to her from Diversified contained false, confusing and misleading representa-

tions, in violation of § 1692e, insofar as they warned that a failure to respond within 10 days might result in possible administrative wage garnishment, whereas, in fact, Diversified had already garnished her wages prior to sending the letters. Defendant has not provided any briefing on whether Moore has validly raised this claim or, if she has, whether these representations might be found "false, deceptive, or misleading" under the least sophisticated consumer standard applied to FDCPA claims. The failure to address Moore's claim also weighs against granting summary judgment here. *Cf.* Fed.R.Civ.P. 56(c) (summary judgment appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law").